Slip Op. 20-96

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MAGNUM MAGNETICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>MAGNETIC BUILDING SOLUTIONS,<br><br>Defendant-Intervenor. | Before: Jane A. Restani, Judge<br><br>Court No. 19-00126 |

**OPINION**

[Commerce's Scope Ruling finding the subject merchandise outside of the scope of the relevant antidumping and countervailing duty orders is sustained]

Dated: July 13, 2020

Ritchie T. Thomas, Jeremy W. Dutra, and Christopher D. Clark, Squire Patton Boggs (US) LLP, of Washington, D.C., for Plaintiff Magnum Magnetics Corporation.

Jason M. Kenner, Trial Attorney, and Claudia Burke, Assistant Director, U.S. Department of Justice, Civil Litigation Division, Commercial Litigation Branch, of New York, N.Y., for Defendant United States of America.  Of counsel on the brief was Brandon J. Custard, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement & Compliance, of Washington, D.C.

Melissa M. Brewer and Laurence J. Lasoff, Kelley Drye & Warren, LLP, of Washington, D.C., for Defendant-Intervenor Magnetic Building Solutions.

Restani, Judge:  This action challenges a final scope ruling of the United States Department of Commerce, International Trade Administration ("Commerce") regarding certain flexible magnets from the People's Republic of China ("PRC"), imported by Defendant-Intervenor

Magnetic Building Solutions ("MBS"). Commerce determined that MBS's magnets are excluded from the scope of the antidumping and countervailing duty orders because they are "<u>printed flexible magnets</u>" of a kind that the orders' plain text expressly excludes. <u>See</u> <u>Scope Ruling on the Antidumping and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Request by Magnetic Building Solutions</u>, A-570-922, C-570-923 (Dep't Commerce June 19, 2019) ("<u>Scope Ruling</u>").

Plaintiff, Magnum Magnetics Corporation ("Magnum") moves for judgment on the agency record and asks the court to hold that Commerce's determination is contrary to the text of the antidumping and countervailing duty orders, and therefore, is unsupported by substantial evidence or otherwise not in accordance with law. <u>See</u> Mem. of P. & A. in Supp. of Pl. Magnum Magnetic Corp.'s Rule 56.2 Mot. For J. on the Agency R., ECF No. 22 at 12 (Dec. 2, 2019) ("Magnum Br."). Defendant, the United States of America (the "government"), responds that Commerce's scope ruling is supported by substantial evidence and otherwise in accordance with law, and asks the court to sustain Commerce's determination. <u>See</u> Defendant's Response to Pl. Rule 56.2 Mot. For J. on the Agency R., ECF No. 25 at 7 (Mar. 3, 2020) ("Gov. Br."). For the following reasons, the court affirms Commerce's scope ruling.

## BACKGROUND

In 2008, Commerce published antidumping and countervailing duty orders on certain flexible magnets from the PRC. <u>See</u> <u>Antidumping Duty Order: Raw Flexible Magnets from the People's Republic of China</u>, 73 Fed. Reg. 53,847 (Dep't Commerce Sept. 17, 2008) ("<u>ADD Order</u>"); <u>Raw Flexible Magnets from the People's Republic of China: Countervailing Duty Order</u>, 73 Fed. Reg. 53,849 (Dep't Commerce Sept. 17, 2008) ("<u>CVD Order</u>") (collectively, the "Orders"). The Orders cover merchandise under subheadings 8505.19.10 and 8505.19.20 of the

Harmonized Tariff Schedule of the United States ("HTSUS"), under which the MBS magnets are classified.[1] Specifically, the Orders include the following merchandise:

> [C]ertain flexible magnets regardless of shape, color, or packaging. Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other, or any other material capable of being permanently magnetized.
>
> Subject merchandise may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color. Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

ADD Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850. But, the Orders expressly exclude:

> [P]rinted flexible magnets, defined as flexible magnets (including individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like.

ADD Order, 73 Fed. Reg. at 53,487; CVD Order, 73 Fed. Reg. at 53,850. Nevertheless, the foregoing "exclusion does not apply" to those "printed flexible magnets" whose printing consists "only of the following:"

> [A] trade mark or trade name; country of origin; border, stripes, or lines; any printing that is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (e.g., "print this side up," "this side up," "laminate here"); printing on adhesive backing (that is, material to be removed in order to expose adhesive for use such as application of laminate) or on any other covering that is removed from the flexible magnet prior or subsequent to final printing and before use; non-permanent printing

---

[1] The Orders provide that the HTSUS subheadings are "provided only for convenience and customs purposes; the written description of the scope of the order is dispositive." ADD Order, 73 Fed. Reg. at 53,847; CVD Order, 73 Fed. Reg. at 53,850.

>   (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be re-printed); printing on the back (magnetic) side; or any combination of the above.

ADD Order, 73 Fed. Reg. at 53,487; CVD Order, 73 Fed. Reg. at 53,850. The parties do not dispute the meaning of the main language of the Orders, Magnum instead challenges Commerce's determination that the MBS magnets fall within the exclusion. See Magnum Br. at 3–19. The MBS magnets are raw flexible magnetic underlays sold in both rolls and panels. Scope Ruling at 3. The Orders address three types of underlays. Id. at 3, 10. The first underlay is sold in a roll and is "rolled onto the floor with the non-magnetized side facing down." Id. Users then purchase flooring material with a magnetic backing to attach to the magnetized side of the product. Id. The non-magnetized side of the product is "permanently bonded" with paper printed with a design, such as hardwood. Id. The second underlay is identical, except that the non-magnetized side with the hardwood design is covered in adhesive material and a strip of removable paper, so that the product can be stuck to the floor. Id. at 3, 10. The third underlay is sold in panels with an adhesive backing and is meant to be stuck to walls. Id. Customers similarly can attach wall coverings with magnetic backing to the product. Id. at 3. In sum, each of the three types of underlays have a permanent hardwood design on the non-magnetized side. Id. at 3–4.

After reviewing the "language of the scope, the description of the products contained in MBS's Scope Inquiry, prior scope determinations, including in the investigation, and the [International Trade Commission ("ITC")] Final Injury Determination," Commerce determined that the MBS magnets are excluded from the scope of the Orders. Scope Ruling at 12. In particular, Commerce considered two prior scope rulings in arriving at its determination. Id. at 4–5, 12. Commerce found that although the list of exemplars in the exclusion language did not apply to

MBS magnets, the list was a non-exhaustive guideline and that the permanent decorative motif on the underlays rendered them subject to the exclusion. Id. at 13–15.

Magnum contended that MBS's magnets are in-scope because: 1) they do not serve a decorative purpose, 2) they are not like the products listed in the exclusion, and 3) the design is printed on the back of the product, and thus falls within an exception to the exclusion. See Magnum Br. at 6–12. The government argues that Commerce did not err in finding the merchandise out of scope. Gov. Br. at 7–18.[2]

**JURISDICTION AND STANDARD OF REVIEW**

The court's jurisdiction to review a challenge to a final scope ruling is pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c) (2012).[3] Unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law," the court upholds Commerce's determination that the scope of an antidumping or countervailing duty order excludes the subject merchandise. 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1071 (Fed. Cir. 2001) (internal quotation and citations omitted).

**DISCUSSION**

**I. Legal Framework**

In making a scope ruling, Commerce must look first to the language of the antidumping or countervailing duty order. See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097–98 (Fed. Cir. 2002). Commerce must also consider the (k)(1) sources: "[1] The descriptions of the

---

[2] In lieu of a brief, MBS submitted a letter supporting Commerce's final scope ruling. MBS Letter Re: Magnum Magnetics Corp. v. United States, Court No. 19-00126, ECF No. 26 (March 4, 2020).

[3] Further citations to the United States Code are to the 2012 edition unless otherwise indicated.

merchandise contained in the petition, [2] the initial investigation, and [3] the determinations of [Commerce] (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1). If the sources in (k)(1) are not dispositive, Commerce must then consider the (k)(2) factors. 19 C.F.R. § 352.225(k)(2). "Commerce cannot 'interpret' an antidumping or countervailing duty order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." See Duferco Steel, 296 F.3d at 1095 (quoting Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2011)).

## II. Language of the Orders

Commerce found that the MBS magnets are excluded from the scope of the Orders because the plain language excludes printed flexible magnets, and because the MBS magnets do not conform to any of the exceptions to the exclusion. Scope Ruling at 18.

Magnum contends that the MBS magnets are not like the enumerated excluded items: "business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like." Magnum Br. at 6–10. It argues that the list implies that any decorative motif must be visible during use for merchandise to merit exclusion. Id. The government responds that the phrase "including but not limited to" in the exclusion language renders the list informational, not exhaustive, and that the product need not be like the other products on the list to qualify for the exclusion. Gov. Br. at 9–11. In coming to this conclusion, the government stresses that although Commerce may clarify existing orders, it may not interpret them in a way to change the scope of the orders. See Gov. Br. at 11 (citing Global Commodity Grp. LLC v. United States, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).

Magnum argues that the unifying characteristic of "business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like" is to display a printed design

to the user, either to relay information or decorate the surrounding space. See Magnum Br. at 7–8. Accordingly, it contends that any excluded article should serve a similar purpose to merit exclusion. Id. MBS's magnets do not ultimately display information or decorate the space they are installed in. Scope Ruling at 3–4, 7. Their design is either never visible, or briefly visible after they are removed from their packaging until they are placed design-side down on a floor or wall. See id. Therefore, in Magnum's view, the product is not "like" the products enumerated in the exclusion. Magnum Br. at 7–8.

The utilization of the phrase "including but not limited to," however, supports the government's position. The list: "business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like," see Scope Ruling at 2, is exemplary but not exhaustive, and was justifiably read to include products without a common purpose or unifying quality with the enumerated items. MBS's product meets the requirements of the exclusion; it is permanently bonded with paper bearing a conforming printed image. Further, Magnum does not argue, nor does the court find, that any of the exceptions to the exclusion apply to the MBS magnets. It was reasonable based on the language of the Orders for Commerce to determine that merchandise need not have a design visible after installation to merit exclusion.

### III.　　Relevant (k)(1) Sources

Turning to the (k)(1) sources, none appear inconsistent with Commerce's ruling. The investigation report is of little probative value because MBS did not produce the magnets at issue at the time of the underlying petition and investigation. See Raw Flexible Magnets from the People's Republic of China; Scope Request from Magnetic Building Solutions LLC – Final Scope Determination, A-570-922, C-570-923 at 11–12 (Dep't Commerce Mar. 6, 2018) ("MBS 2018 Ruling"). With that said, there are indications in the investigation documents that printed

products, as stated by the ITC, generally do not fall within the scope of the Orders, as "Raw flexible magnets" is a term "adopted for the purposes of these investigations to distinguish between the unprinted products of raw magnet producers such as Magnum, Flexmag, and Holm, and the printed magnets and other products of their non-distributor customers." <u>Raw Flexible Magnets from China and Taiwan</u>, USITC Pub. 4030, Inv. Nos. 701-TA-452 and 731-TA-1129-1130 at I-7, n. 15 (May 8, 2008) (final determination) ("Investigation Report"); <u>see also</u> <u>id.</u> at 5 (noting that "Commerce has excluded most types of printed flexible magnets from the scope of investigation."). In its scope ruling, Commerce mainly focuses on two prior determinations in concluding that the MBS magnets are properly excluded from the scope of the Orders. <u>See</u> <u>Scope Ruling</u> at 4–5. Each is addressed in turn.

First, the government argues that its determination is consistent with a prior scope ruling on a magnetic label holder with a zebra print design. <u>See</u> Gov Br. at 16–17. In 2017, Tatco Products, Inc. ("<u>Tatco</u>") requested a scope ruling for four magnetic label holders. <u>Scope Ruling on the Antidumping and Countervailing Duty Orders on Raw Flexible Magnets from the People's Republic of China: Request by Tatco Products, Inc.</u>, A-570-922, C-570-923 at 2 (Dep't Commerce Aug. 23, 2017) ("Tatco Ruling"). The label holders consisted of a raw flexible magnet and a clear plastic pocket heat-sealed to the front of the magnet. <u>See</u> <u>id.</u> at 4. Although one of the label holders had zebra stripes printed in black ink on the front of the white magnet, end users could insert a piece of fiberboard into the plastic pocket, obscuring the design. <u>See</u> <u>id.</u> at 4, 7. The government concluded that the zebra-print label holder was exempt from the antidumping order because it contained a permanent printed design on the non-magnetic side of the magnet, rejecting Magnum's argument that the printing was functionally removed before use because it was concealed during use. <u>Id.</u> at 12.

In its brief, Magnum attempts to distinguish MBS from Tatco by claiming that Tatco's zebra design is not completely covered by the label when in use, and even if it is, the Tatco product is meant to be seen while empty, during which time the zebra print serves a decorative purpose. Magnum Br. at 11. In comments made in the Tatco Ruling, however, Magnum itself argued that the printing on Tatco's magnets had no function, decorative or otherwise, writing that "Tatco's printed magnets are precisely the type of non-functional printing that is addressed in the scope language." Tatco Ruling at 8. Commerce addressed Magnum's argument in Tatco by saying: "We disagree with Magnum that the exclusion language of the scope Orders contains an exception for printing that is concealed during the use of a flexible magnet." Id. at 12. Therefore, by the same logic, Commerce found that MBS's printed flooring magnets can qualify for the exclusion even if the printing is not visible during use and serves no functional purpose. Scope Ruling at 15–16.

Second, Commerce issued an earlier scope ruling to MBS for a similar product on March 6, 2018, and determined that the product was in scope "[1] because it is a bonded flexible magnet…[2] it consists of a flexible binder and a magnetic element…combined into a solid sheet by mechanical rolling...[and] [3] none of the exclusions in the scope of the Orders are applicable." MBS 2018 Ruling at 15–16. The magnetic flooring underlay in that determination was identical to the product at issue here, except that it had "no printing on it." Scope Ruling at 4. The government distinguished a previous ruling finding surgical drapes out of scope by noting that, unlike the underlays, the surgical drape magnets were "unprintable and unusable for other purposes" because they were permanently encased in other materials. MBS 2018 Ruling at 14.

Commerce's decision to exclude the MBS magnets at issue is consistent with its previous scope rulings. The MBS 2018 Ruling is clearly distinguishable because there the product at issue did not have any printing, thereby rendering it not subject to any exclusion. See MBS 2018 Ruling

at 5, 16. The Tatco Ruling, similarly, is entirely consistent with Commerce's decision here. Although the zebra design was obscured when used in certain ways, Commerce determined that the language of the Orders did not require visibility during use. Tatco Ruling at 12. In continuing that logic here, Commerce noted that nothing in the language of the exclusion or the exceptions to the exclusion requires the design to be seen while in use. Scope Ruling at 15. Although it may have been reasonable for Commerce to interpret the exclusion language to more closely track the listed exemplars, nothing in the language of the Orders or the (k)(1) sources undermines Commerce's contrary position. King Supply v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (noting that "even if it is possible to draw two inconsistent conclusions from the evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence.") (citations omitted). Further, it is important that orders be interpreted consistently and not expanded so that importers and exporters have notice that their merchandise is subject to unfair trade remedies. See ArcelorMittal Stainless Belgium N.V. v. United States, 694 F.3d 82, 88 (Fed. Cir. 2012) (noting that "the primary purpose of an antidumping order is to place foreign exporters on notice of what merchandise is subject to duties."); see also Eckstrom, 254 F.3d at 1072 ("Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms.") (citation omitted).

Magnum raises one final argument. It argues that because the MBS magnets are installed with the printed side down, the printed side is the "back" of the product. Magnum Br. at 11–12. In the Orders, Commerce stated that printing "on the back (magnetic) side" does not merit exclusion. ADD Order, 73 Fed. Reg. at 53,487; CVD Order, 73 Fed. Reg. at 53,850. Accordingly, Commerce determined that the "back" of an MBS magnet is the magnetic side, regardless of how the product

is positioned. Scope Ruling at 16. MBS magnets are printed on the non-magnetic side, i.e. the "front," and therefore are not excluded by the scope language. Id. Commerce's finding is based on a reasonable, straightforward reading of the scope language and Magnum cites nothing to call into question this interpretation.

Commerce declined to read into the language of the Orders an exclusion requirement that did not clearly exist and nothing Magnum points to sufficiently undermines that decision. Accordingly, the court sustains Commerce's decision.[4]

## CONCLUSION

For the foregoing reasons, Magnum's motion for judgment on the agency record is denied. The court sustains Commerce's determination that the MBS magnets are excluded from the scope of the Orders. Judgment will enter accordingly.

                                                      /s/ Jane A. Restani
                                                      Jane A. Restani, Judge

Dated: July 13, 2020
       New York, New York

---

[4] Throughout its brief, Magnum appears to argue that MBS is attempting to circumvent the previous scope ruling finding that certain MBS magnets were within the scope of the Orders. See Magnum Br. at 3, 6, 10. As the government notes, however, Magnum did not request an anticircumvention inquiry and Commerce did not exercise its discretion to self-initiate one. See Gov. Br. at 13; see also 19 U.S.C. § 1677j (circumvention of antidumping and countervailing duty orders); 19 C.F.R. §§ 351.225(g–j) (corresponding regulations). Given the differing analysis between standard scope rulings and anticircumvention inquiries, it is possible that Commerce would have arrived at a different decision had such a process been pursued. See Target v. United States, 578 F. Supp. 2d 1369, 1373 (CIT 2008) (discussing Commerce's practice and the differing statutory and regulatory procedures for anticircumvention inquires as compared to other scope rulings). Nonetheless, Magnum's anticircumvention arguments are beyond the purview of this action. See Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003) ("If a party does not exhaust available administrative remedies, 'judicial review of Commerce's actions is inappropriate.'") (citation omitted).